**In re DE LUXE, N.V.**

**No. 92–1293.**

United States Court of Appeals, Federal Circuit.

March 29, 1993.

---

\* Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-tion.

Parker H. Bagley, Brumbaugh, Graves, Donohue & Raymond, New York City, argued for appellant. With him on the brief was John D. Murnane.

Nancy C. Slutter, Associate Sol., Office of Sol., Arlington, VA, argued for appellee. With her on the brief was Fred E. McKelvey, Sol. Of counsel was Albin F. Drost.

Before RICH, ARCHER, Circuit Judges, and CURTIN, District Judge.*

RICH, Circuit Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (Board) of the United States Patent and Trademark Office (PTO), affirming the Examining Attorney's refusal to grant a trademark registration to foreign applicant De Luxe, N.V. (De Luxe) for its mark IVOIRE DE BALMAIN.[1] The Board refused registration on the ground that De Luxe is not the owner of the foreign registration on which the U.S. application was based under § 44 of the Lanham Act (15 U.S.C. § 1126 (1988)). We reverse.

There are two foreign applicants involved here: De Luxe, the assignee of the U.S. application at issue and petitioner in this case; and Balmain, International, B.V. (Balmain), the assignor of the U.S. application and current owner of the foreign registration.

The U.S. application for registration of the mark IVOIRE DE BALMAIN for fragrances and related cosmetics was originally filed by Balmain, a Netherlands corporation, on November 25, 1987. Balmain filed with the PTO pursuant to § 44, under which a foreign applicant has two bases on which to register a mark in the United States: (1) use "in commerce" pursuant to § 1(a) of the statute; and (2) proof of ownership of a foreign registration in the applicant's country of origin pursuant to § 44(c). *In re Fisons Limited,* 197 USPQ

888 (TTAB 1978). Basing its U.S. application on a pending Benelux application for registration,[2] Balmain filed with the PTO pursuant to § 44(d). Subsequently, Balmain submitted a certified copy of its Benelux registration for IVOIRE DE BALMAIN to the PTO on April 7, 1989 in order to comply with § 44(c), thus, satisfying the statutory requirements for a foreign applicant.

It was only after satisfying the § 44 requirements, that Balmain then assigned the U.S. application for registration of IVOIRE DE BALMAIN to De Luxe on August 2, 1989. Advised of this assignment, the PTO accordingly recorded it pursuant to § 10 of the statute. Subsequently, the Examining Attorney requested evidence from petitioner that the Benelux registration had been assigned to De Luxe as well as the U.S. application. De Luxe, disputing this requirement, requested authority for the PTO's position. Citing § 1 of the statute, the Examiner issued a final refusal to register petitioner's mark on August 30, 1990.

The Examiner's decision was affirmed by the Board on September 18, 1991 on the ground that De Luxe, while the owner of the U.S. application, "is not also the current holder of the foreign registration on which the U.S. application is based." And although vacated upon a motion for reconsideration,[3] the decision of the Board was reaffirmed and reinstated on January 17, 1992.

Neither De Luxe nor the PTO disputes the fact that a foreign applicant, if not asserting use in commerce, is required to base its U.S. application on its foreign registration. The issue here, of first impression for this court, is the point in time at which this requirement must be met.

In its opinion, the Board stated that "the issue before us is whether a foreign appli-

---

* Honorable John T. Curtin, Senior District Judge, Western District of New York, sitting by designation.

1. Application Serial No. 73/697,638 filed November 25, 1987.

2. Belgium, Netherlands and Luxembourg have a common trademark registry known as the Benelux registry.

3. The motion for reconsideration was granted on the ground that the Examining Attorney's brief had not been served on De Luxe's attorney.

cant must be the owner of its home country registration, on which its U.S. application is based, at the time the U.S. application is approved for publication." Thus, the Board determined that because De Luxe was not the owner of the foreign registration at the *time of publication,* De Luxe had no right to a U.S. registration of the mark.

De Luxe, however, asserts that the PTO has "misconstrued and misinterpreted" the plain language of the statute by engrafting on § 44 an additional requirement, and argues that "the operative time frame" under this provision is the time at which the *application was filed.* Thus, a foreign applicant who satisfies that requirement may then assign the U.S. application without precluding the assignee's ability to obtain a U.S. registration.

■ We agree with De Luxe that the language of § 44 is clear: a foreign applicant must comply with the requirements *at the time the application is filed;* and the language of the statute neither expressly nor impliedly restricts a foreign applicant from freely alienating a U.S. application once the statutory requirements have been met.

A foreign applicant seeking U.S. registration under § 44 must begin by complying with subsection (c) which says in pertinent part:

No registration of a mark in the United States by a person described in subsection (b) [4] of this section shall be granted until such mark has been registered in the country of origin *of the applicant,* unless the applicant alleges use in commerce. [Emphasis ours.]

15 U.S.C. § 1126(c). Once a foreign registration is obtained, the *applicant* may file with the PTO pursuant to § 44(e) which requires that "[t]he *application* therefor shall be accompanied by a certification or a certified copy of the registration in the country of origin of the applicant." [Emphasis ours.] 15 U.S.C. 1126(e). For an applicant whose foreign application for reg-

istration is pending, and who, therefore, cannot provide such a certificate, § 44(d) allows the applicant for U.S. registration to be filed provided that,

... the *application* in the United States is filed within six months from the date on which the application was first filed in the foreign country.... [Emphasis ours.]

Regardless of whether an applicant files under § 44(e) or § 44(d), the language of the statute clearly contemplates that the requirements of § 44 be satisfied *at the time the application is filed.*

There is no question that Balmain, as the owner of the foreign registration, satisfied the requirements of § 44 *at the time the application was filed.* Thus, the U.S. application was assigned to De Luxe after the statutory requirements had been met, but prior to the date of publication. We do not believe that this situation is significantly different from the one in which a foreign applicant merely waits until the U.S. registration issues, and then assigns the U.S. registration. In both instances, the statutory requirements under § 44 have been satisfied, and only then, is the application or registration assigned; the distinction being merely a delay in the timing of the assignment. We fail to see the rationale of allowing the assignee in one instance to obtain U.S. registration of the mark, while prohibiting it in the other based on an arbitrarily chosen cut off point.

■ The PTO offers little support for its position beyond claiming that it has been a long-standing practice to require that, *at the time of publication,* a foreign applicant must own the foreign registration. Nonetheless, the PTO asserts that its interpretation of the statute is entitled to deference by this court. And, we agree that where an agency is charged with the administration of a statute, its statutory interpretation "should be followed unless there are compelling indications that it is wrong." *Chula Vista City School Dist. v.*

**4.** Section 44(b) limits the applicability of section 44 to those whose country of origin is a party to a convention or treaty to which the United

States is also a party, or which extends reciprocal rights to nationals of the United States.

*Bennett,* 824 F.2d 1573, 1580 (Fed.Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

In this case, we find no basis for the PTO's interpretation of the Lanham Act. No provision of the statute mandates that a foreign applicant be the owner of the foreign registration *at the time of publication.* Rather, as is evidenced by the language of the statute, the requirement exists *at the time the application is filed.* Such "compelling indications" lead us to conclude that the PTO's statutory interpretation is wrong and, therefore, no deference is due. Thus, a foreign applicant for U.S. registration who satisfies the requirements of § 44, may assign the U.S. application without assigning foreign rights, and without precluding the assignee's ability to thereafter obtain a U.S. registration.

Moreover, in *Gillette Co. v. Kempel,* 254 F.2d 402, 117 USPQ 356 (CCPA 1958), our predecessor court held:

> That the assignee of a registration stands in the place of the registrant in all respects is also clear from section 45 of the Lanham Act which provides that "The terms *'applicant'* and *'registrant'* embrace the legal representatives and successors and *assigns* of such *applicant* or registrant." [Emphasis ours.]

*Gillette,* 254 F.2d at 404, 117 USPQ at 357. Under § 45, then, an assignee of an application stands in the place of the applicant in all respects as well. Therefore, De Luxe as the assignee, stands in the place of Balmain, the assignor, and is entitled to rights perfected under § 44 and thus, to the U.S. registration as well. Accordingly, we *reverse* the Board's decision not to register petitioner's mark.

REVERSED.